IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM C. OUTLAW, *et al.*,    *
                               *
        Plaintiffs,            *
                               *
vs.                            *    CIVIL ACTION NO. 23-00121-TFM-B
                               *
SECURITY BENEFIT LIFE          *
INSURANCE COMPANY, *et al.*,   *
                               *
        Defendants.            *

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiffs William C. Outlaw and Patricia M. Outlaw's Motion for Remand (Doc. 10). The motion, which has been fully briefed, has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1). (Doc. 28). Upon consideration of all matters presented, the undersigned recommends, for the reasons stated herein, that Plaintiffs' motion to remand (Doc. 10) be **GRANTED**, that Defendants' motions to dismiss (Docs. 6, 26) be **DENIED as moot**, and that this action be remanded to the state court where it was originally filed.

## I.    BACKGROUND

On March 3, 2023, Plaintiffs William C. Outlaw and Patricia M. Outlaw commenced this action in the Circuit Court of Clarke County, Alabama. (Doc. 1-1). Plaintiffs' complaint names as Defendants Security Benefit Life Insurance Company ("Security

Benefit"), Care Financial, LLC ("Care Financial"), David H. Schapals ("Schapals"), and three fictitious defendants.[1]  (Id. at 9-10).  According to the complaint, Plaintiffs formerly resided in Jackson, Alabama, and are current residents of Muscle Shoals, Alabama.  (Id.).  Security Benefit is alleged to be "a foreign life insurance corporation which is registered to do business in the State of Alabama[.]"  (Id. at 10).  Care Financial is alleged to be "a Financial and Insurance Advisor Company with its principal place of business being in Mobile, Alabama."  (Id.).  Schapals is alleged to be "a Financial Advisor and currently the Vice President of Care Financial, and a resident of Daphne, Alabama."  (Id.).

The complaint alleges that in the fall of 2012, Plaintiffs met with Schapals at their home in Jackson, Alabama, to discuss their retirement objectives and long-term financial goals.  (Id. at 10-11).  Plaintiffs "discussed in confidence their financial situation, and provided Schapals with their financial and insurance information, as well as their retirement plan."  (Id. at 11).  Based on information obtained from the meeting and a review

---

[1] Naming fictitious defendants is "a practice which is allowed under the [Alabama] state procedural rules" but "is not generally recognized under the Federal Rules of Civil Procedure."  Collins v. Fingerhut Companies, Inc., 117 F. Supp. 2d 1283, 1285 n.1 (S.D. Ala. 2000).  The Court will not consider the citizenship of the fictitious defendants in deciding the instant motion to remand. See 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

of Plaintiffs' files and records, Schapals provided Plaintiffs with financial and retirement options, and he discussed and encouraged Plaintiffs to purchase an annuity from Security Benefit, a life insurance company with whom Schapals and Care Financial "have a financial relationship" and "regularly conduct business." (Id.). "On or about November 16, 2012, Plaintiffs and Schapals, as the Plaintiffs' Financial Advisor, filled out a Security Benefit Total Value Annuity Application[,]" which was signed by Mr. Outlaw and listed the primary and secondary beneficiaries, the initial purchase payment for the annuity, and other personal information. (Id.).

On December 3, 2012, "Plaintiffs and Security Benefit executed" a "Fixed Index Flexible Premium Deferred Annuity Contract With Bonus" for the purchase of "an individual retirement annuity." (Id. at 12). "Under the terms of the Contract, the Annuity purchased by Plaintiffs is in William C. Outlaw's name, and William C. Outlaw is designated as both the owner and the annuitant."[2] (Id.). Plaintiffs invested $600,000.00 into the annuity and were given a ten percent bonus by Security Benefit, "for a total initial investment of $660,000.00." (Id.). Schapals "is the Financial Advisor on the Plaintiffs' Total Value Annuity account and is listed as the Financial Professional on each

---

[2] Mrs. Outlaw is designated as the primary beneficiary on the annuity. (Doc. 1-1 at 32).

Security Benefit Annual Statement to the present." (Id.).

The annuity contract included a "Guaranteed Lifetime Withdrawal Benefit Rider (the 'Lifetime Rider')." (Id. at 12, 70-83). The complaint alleges the following with respect to the Lifetime Rider:

> Schapals and Care Financial made specific representations to Plaintiffs about the importance of the Lifetime Rider. Schapals represented and promised Plaintiffs that when activated as of the date of Plaintiffs' first Annuity withdrawal, the Annuity Lifetime Income Benefit Base as of December 3, 2013 would be locked-in, and the accumulation phase of the Annuity, which, under the Rider, should only take place during the first year of the Annuity, would be terminated. Defendants also represented and promised that the substantial Lifetime Rider fees would be worth the benefits to their Annuity value that the Rider provided.
>
> The Lifetime Rider can only be activated by Defendants, not by the Plaintiffs. The activation of the Rider required Defendants to release the Annuity from the accumulation phase it was in for the first one-year period, and then lock-in the Contract's Lifetime Income Benefit Base of $684,962.19, the amount of funds in the annuity as of December 3, 2013. Locking in the Contract's Lifetime Income Benefit Base ensures that the Annuity would never suffer a loss during the lifetime of the annuity.
>
> The Plaintiffs were told by Defendants that the alternative, that is, keeping the Annuity in the "accumulation phase", would result in a substantial reduction in the amount of the Lifetime Income Benefit Base with every withdrawal Plaintiffs took.

(Id. at 13).

Plaintiffs allege that "[c]ontrary to the terms of the Contract and the Lifetime Rider, and contrary to the representations made to Plaintiffs, unbeknownst to the Plaintiffs,

the Lifetime Rider was not activated at the date of the Plaintiffs' first withdrawal in December 2013." (Id. at 13-14). Plaintiffs allege that they "received annual statements about the Annuity from Security Benefit showing Schapals as their Financial Professional responsible for the Annuity. Yet, neither Schapals nor Care Financial, nor any representative at Security Benefit ever activated the Lifetime Rider in breach of its terms and [none] of these Defendants informed Plaintiffs that the Lifetime Rider was never activated." (Id. at 14). Plaintiffs state that because they "paid a substantial fee for the Rider, now over $48,000.00 in total, they reasonably believed that the Lifetime Rider had been activated." (Id.). Plaintiffs allege that they "only discovered on September 7, 2022, after hiring a new financial advisor to review their retirement investments the fact that the Lifetime Rider had never been activated." (Id.).

According to Plaintiffs:

Defendants' failure to timely activate the Lifetime Rider, which would have locked-in Plaintiffs' Lifetime Income Benefit Base of $684,962.19 as Plaintiffs were promised, resulted in the Annuity losing substantial base value every year since 2013. As of December 2022, Plaintiffs have suffered $186,500.45 in losses. Even if the Lifetime Rider was activated at this late date, Plaintiffs will continue to suffer losses of more than $10,000.00 per year due to the substantial accumulated losses that occurred due to Defendants' failure to activate the Rider in 2013.

(Id.).

In count one of the complaint, Plaintiffs assert a claim for

breach of contract against Security Benefit, Schapals, and Care Financial. (Id. at 15-16). Plaintiffs allege that they "purchased an annuity and entered into a Contract" with Security Benefit "and/or" Schapals and Care Financial, which included the Lifetime Rider. (Id. at 15). Plaintiffs state that they paid an annual fee for the Lifetime Rider, and that "Defendants promised that the Rider would 'activate' on the date of Plaintiffs['] first annuity withdrawal." (Id.). According to Plaintiffs, "[t]his required Defendants to release the Annuity from its 'accumulation' phase, which the Annuity was in for its first year, and then lock-in the Annuity's Lifetime Income Benefit Base, as provided in the Contract." (Id.). Plaintiffs state that on the date of their first withdrawal, "the Annuity's Lifetime Income Benefit Base was $684,962.19." (Id.). Plaintiffs assert that "Defendants breached the Contract by failing to activate the Lifetime Rider as promised[,]" and that "Defendants continue to breach the terms of the Lifetime Rider." (Id. at 16). Plaintiffs allege that they "suffered substantial injury proximately caused by Defendants' inexplicable and nefarious breach of the terms of the Contract and/or Lifetime Rider[.]" (Id.).

In count two, Plaintiffs assert a claim for negligence against Schapals and Care Financial. (Id. at 16-18). Plaintiffs allege that as a professional financial advisor, Schapals owed them a duty "to use his professional financial judgment and analysis in

accordance with recognized financial advisor standards, and to use reasonable care in the performance of [his] duty to provide financial advice." (Id. at 17). Plaintiffs allege that "[a]s the Financial Professional/Advisor on the Security Benefit Annuity," Schapals owed them "a duty to responsibly manage and oversee Plaintiffs' Annuity performance" and "a duty to responsibly manage and oversee each rider and endorsement to the Annuity, including the performance of the Lifetime Rider." (Id.). Plaintiffs also assert that Schapals and Care Financial had a duty "to oversee the release of the Annuity's accumulation phase, and lock-in the Annuity's Lifetime Income Benefit Base[,]" a duty which "included notifying and alerting Security Benefit if the Lifetime Rider was not properly activated." (Id. at 18). Plaintiffs allege that Schapals and Care Financial "breached their duties by failing to activate the Lifetime Rider and release the Annuity from its accumulation phase on the date of Plaintiffs' first withdrawal and lock-in the Annuity's Lifetime Income Benefit Base." (Id.). Plaintiffs allege that they "suffered substantial losses and damages" as a direct and proximate result of Schapals' and Care Financial's professional negligence. (Id.).

In count three, Plaintiffs assert a claim for negligent misrepresentation against Schapals, Care Financial, and Security Benefit. (Id. at 19-20). Plaintiffs allege that Schapals and Care Financial represented to them in the fall of 2012 "that by

agreeing to and paying an annual fee for the Lifetime Rider, the Security Benefit Annuity . . . would lock-in to the Annuity's Lifetime Income Benefit Base of $684,962.19 on the date of Plaintiffs' first withdrawal on December 3, 2013." (Id. at 19). Plaintiffs similarly allege that Security Benefit represented to them in December 2012 "that by agreeing and paying for the Lifetime Rider, the Security Benefit Annuity would lock-in to the Annuity's Lifetime Income Benefit Base of $684,962.19 on the date of Plaintiffs' first withdrawal on December 3, 2013." (Id.). Plaintiffs assert that "Defendants made these representations recklessly and without regard to" their truth, and that "[a]t the time these reckless misrepresentations were made, Defendants did not intend to activate the Lifetime Rider terms on the date of the Plaintiffs' first withdrawal and instead allowed the Annuity to remain in the initial accumulation mode." (Id.). Plaintiffs allege that "Defendants negligently misrepresented to Plaintiffs that Plaintiffs would benefit from the terms of the Lifetime Rider" when in fact, "none of the Defendants activated the Rider." (Id.). Plaintiffs state that as "their Financial Professional/Advisor and the named Financial Professional throughout the life of the Annuity," they reasonably relied on the advice of Schapals and Care Financial about the terms of the annuity contract and specifically the operation of the Lifetime Rider, because Schapals and Care Financial have "expertise on annuities and the impact of

the terms of the Rider on the value of their Annuity." (Id. at 20). Plaintiffs assert that they also reasonably relied on Security Benefit's "expertise and representations regarding the Lifetime Rider because [it] has been in the business of life insurance and retirement annuities for over a century." (Id.). Plaintiffs aver that they "did not have the same knowledge or understanding of annuities and retirement options which is why they sought advice" from Schapals and Care Financial, and Plaintiffs state that they "did not discover that the Lifetime Rider was never activated until they hired a different financial advisor in September 2022 to review their retirement investments." (Id.). Plaintiffs allege that they were injured as a proximate result of their reasonable reliance on Defendants' negligent misrepresentations. (Id.).

In count four, Plaintiffs assert a claim for fraudulent misrepresentation against Schapals, Care Financial, and Security Benefit. (Id. at 21-22). Plaintiffs allege that Defendants "made false claims" to Plaintiffs "regarding on-going financial strength of the Annuity Plaintiffs purchased, including that on the date of Plaintiffs' first withdrawal, the Annuity would be released from its initial and year-long accumulation phase and the Contract's Lifetime Income Benefit Base of $684,962.19 would lock-in." (Id. at 21). Plaintiffs allege that "Defendants knew their representations about the Lifetime Rider were false at the time

9

the representations were made, and that the terms of the Lifetime Rider would not be activated as promised." (Id.). Plaintiffs further allege that Defendants "continued to accept Lifetime Rider fees from Plaintiffs and intentionally did not inform Plaintiffs that the Lifetime Rider was never activated, resulting in losses to the Plaintiffs." (Id.). Plaintiffs assert that they reasonably relied on Defendants' false representations and did not discover that Defendants' representations were fraudulent until September 2022, when they hired another financial advisor to review their annuity investment. (Id. at 21-22). Plaintiffs allege that they were injured as a direct and proximate result of their reasonable reliance on Defendants' fraudulent representations. (Id. at 22).

In count five, Plaintiffs assert a claim for unjust enrichment against Schapals, Care Financial, and Security Benefit. (Id. at 22-23). Plaintiffs allege that Schapals and Care Financial "knowingly accepted and retained benefits from Plaintiffs in the form of professional fees and other unknown benefits arising from Plaintiffs' agreement to purchase an Annuity from Security Benefit." (Id. at 23). Plaintiffs allege that Security Benefit "also knowingly received and accepted benefits from Plaintiffs in the form of their investment payment." (Id.). Plaintiffs state that in return for the benefits received from Plaintiffs, Defendants "assured and promised Plaintiffs that the Lifetime Rider they agreed to and paid for as part of the Annuity Contract

would activate on the first date of the Plaintiffs' withdrawal from the annuity[,]" which "would terminate the accumulation phase of the Annuity and lock-in the Lifetime Income Benefit Base as of the date of the first anniversary of the Annuity so that the Plaintiffs would not suffer annual losses to the annuity." (Id.). Plaintiffs assert that they "had a reasonable expectation that the benefits they gave Defendants would result in the activation of the Lifetime Rider they agreed to purchase[,]" and that "Defendants have been unjustly enriched and it would be inequitable for Defendants to retain the benefits received at the expense of the Plaintiffs." (Id.).

In count six, Plaintiffs assert a claim for breach of fiduciary duty against Schapals and Care Financial. (Id. at 24-25). Plaintiffs allege that a fiduciary relationship exists between Plaintiffs and Schapals and Care Financial, which began when Schapals met with Plaintiffs at their home in November 2012 and "agreed to provide them with financial, insurance, and retirement advice." (Id. at 24). Plaintiffs state that as part of this fiduciary relationship, they provided Schapals and Care Financial "with extensive confidential and personal financial information and retirement objectives based on their family and personal restrictions[,]" and that Schapals used "this confidential and personal information" to provide Plaintiffs "with financial, insurance and retirement advice which they accepted and

respected." (Id.). Plaintiffs allege that as "the Financial Professional/Advisor on Plaintiffs' Security Benefits Annuity," Schapals and Care Financial owed them "a duty to oversee the implementation and operation of the Annuity." (Id.). Plaintiffs assert that Schapals and Care Financial "breached their fiduciary duty to Plaintiffs by failing to exercise their professional judgment and oversight obligations on which Plaintiffs reasonably relied throughout the life of the Security Benefit Annuity." (Id. at 25). Plaintiffs allege that they "suffered substantial damages and will continue to suffer loss" as a direct and proximate result of Schapals' and Care Financial's breach of fiduciary duty. (Id.).

In count seven, Plaintiffs assert a claim for conversion against Schapals, Care Financial, and Security Benefit. (Id. at 25-27). Plaintiffs state that they "were lulled into believing that the Annuity purchased from Security Benefit through Schapals and Care Financial would, as of the first anniversary of the Annuity, . . . be locked-into the Lifetime Income Benefit Base in the amount of the Annuity value as of the first anniversary which was $684,962.19." (Id. at 26). Plaintiffs allege that Defendants instead "wrongfully took ownership . . . and then misused and/or wrongfully withheld" Plaintiffs' funds, including their "Annuity investment and certain Rider fees and charges and now refuse to return the property wrongfully taken." (Id.). Plaintiffs allege that they "have demanded that Defendants return the funds

wrongfully taken from them but Defendants refuse to return the funds." (Id.). Plaintiffs state that they have suffered and will continue to suffer injury as "a direct and proximate result of Defendants' wrongful conversion" of their property. (Id.).

Security Benefit removed the action to this Court on April 7, 2023.[3] (Doc. 1). In its notice of removal, Security Benefit asserts that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). (Id. at 3). Security Benefit states that it is a citizen of Kansas for purposes of diversity jurisdiction, and it acknowledges that Plaintiffs, Schapals, and Care Financial are all citizens of Alabama. (Id.). However, Security Benefit contends that Schapals and Care Financial were fraudulently joined by Plaintiffs to evade this Court's diversity jurisdiction, so that the Court should disregard the shared Alabama citizenship of Plaintiffs, Schapals, and Care Financial in analyzing whether complete diversity exists. (Id.). Specifically, Security Benefit contends that there is no reasonable possibility that Plaintiffs can prove a cause of action against Care Financial or Schapals because Plaintiffs' claims

---

[3] Schapals consented to Security Benefit's removal of this action. (Doc. 1-4). Care Financial had not yet been served with process at the time of removal and did not need to join in or consent to removal. (See Docs. 19-1, 19-2); GMFS, L.L.C. v. Bounds, 275 F. Supp. 2d 1350, 1354 (S.D. Ala. 2003) (noting that "a defendant that has not been served with process need not join in or consent to removal").

against Care Financial and Schapals are time-barred and also fail
on the merits.  (Id. at 4-17).

Plaintiffs filed the instant motion to remand this action to
state court on April 27, 2023.  (Doc. 10).  Plaintiffs contend
that remand is required because "[t]here are no federal questions
at issue in Plaintiffs' claims against Defendants, and diversity
of citizenship does not exist because Plaintiffs and two
Defendants, Schapals and Care Financial, are residents of the State
of Alabama and there are viable causes of action against these two
non-diverse Defendants."  (Id. at 1-2).  Security Benefit filed a
response in opposition to Plaintiffs' motion (Doc. 17), and
Plaintiffs filed a reply.  (Doc. 18).  The motion to remand is
therefore ripe for resolution and is now before the Court for
review.

II.  **STANDARD OF REVIEW**

"A removing defendant bears the burden of proving proper
federal jurisdiction."  Adventure Outdoors, Inc. v. Bloomberg, 552
F.3d 1290, 1294 (11th Cir. 2008) (quotation omitted).  "Because
removal jurisdiction raises significant federalism concerns,
federal courts are directed to construe removal statutes
strictly."  Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411
(11th Cir. 1999).  "Indeed, all doubts about jurisdiction should
be resolved in favor of remand to state court."  Id.

Where the alleged basis for federal jurisdiction is diversity

of citizenship under 28 U.S.C. § 1332, the removing defendant has the burden of demonstrating that there is (1) complete diversity of citizenship, meaning that the parties are citizens of different states, and (2) an amount in controversy greater than $75,000.[4] Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005); see 28 U.S.C. § 1332(a)(1). For complete diversity of citizenship to be present, "every plaintiff must be diverse from every defendant." Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1564 (11th Cir. 1994).

Notwithstanding the requirement of complete diversity in a case removed under 28 U.S.C. § 1332, "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). In such an instance, the plaintiff "is said to have effectuated a 'fraudulent joinder,' and a federal court may appropriately assert its removal diversity jurisdiction over the case." Id. (internal citation omitted). "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

"To establish fraudulent joinder, 'the removing party has the

---

[4] There is no dispute that the amount in controversy in this action exceeds the $75,000 threshold for diversity jurisdiction.

burden of proving [by clear and convincing evidence] that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'"[5] Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011) (per curiam) (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)).  The removing party's "burden is a 'heavy one.'"  Id.

To determine whether a case should be remanded, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538.  "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998).  "In making this determination, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an

---

[5] There is a third type of fraudulent joinder, "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." Triggs, 154 F.3d at 1287.  The parties do not suggest that this type of fraudulent joinder applies in this case.

arguable one under state law.'" Stillwell, 663 F.3d at 1333 (quoting Crowe, 113 F.3d at 1538). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." Triggs, 154 F.3d at 1287 (emphasis in original); see also Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."). "The potential for legal liability must be reasonable, not merely theoretical." Legg v. Wyeth, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (quotation omitted).

In determining whether a possibility exists that the plaintiff can state a valid cause of action against any resident defendant, courts look "to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." Stillwell, 663 F.3d at 1334. In Alabama, failure to set forth a claim in an initial complaint by means of a short and plain statement showing that the pleader is entitled to relief is not grounds for dismissal with prejudice, "since there are procedures available for correcting a vague or prolix complaint." Bowling v. Pow, 301 So. 2d 55, 62 (Ala. 1974). Thus, under Alabama law, "dismissal [for failure to state a claim] is proper only when

it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." <u>Knox v. Western World Ins. Co.</u>, 893 So. 2d 321, 322 (Ala. 2004) (quoting <u>Nance v. Matthews</u>, 622 So. 2d 297, 299 (Ala. 1993)).

### III. <u>DISCUSSION</u>

As noted *supra*, Security Benefit contends that the Court should disregard Plaintiffs' shared Alabama citizenship with Schapals and Care Financial because Plaintiffs cannot possibly establish a cause of action against either of these Defendants, and thus, they were fraudulently joined. (Doc. 1). Plaintiffs, on the other hand, assert that remand is required because they have pled viable causes of action against Schapals[6] that are not time-barred. (Doc. 10). The question for the Court is whether there is any reasonable possibility that Plaintiffs can maintain a cause of action for breach of contract, negligence, negligent misrepresentation, fraudulent misrepresentation, unjust enrichment, breach of fiduciary duty, or conversion against Schapals in Alabama state court. Because the Court finds that there is a reasonable possibility that an Alabama state court would find that Plaintiffs have stated causes of action for negligence and breach of fiduciary duty against Schapals that are not time-

---

[6] Plaintiffs' motion to remand focuses on the viability of their claims against Schapals and does not specifically address their claims against Care Financial. (<u>See</u> Doc. 10).

barred, the Court need not address whether Plaintiffs have stated viable claims for breach of contract, negligent misrepresentation, fraudulent misrepresentation, unjust enrichment, or conversion.

As a preliminary matter, the Court addresses Security Benefit's assertion that Mrs. Outlaw "has no viable claims" against Schapals or Care Financial because "Mr. Outlaw is the Owner and Annuitant" and Mrs. Outlaw "is not a party to the Annuity." (Doc. 17 at 22 n.1). This assertion was made in a perfunctory manner via footnote in Security Benefit's response to Plaintiffs' motion to remand, and Security Benefit has neither provided supporting arguments nor cited any legal authorities to support its position that Mrs. Outlaw has no viable tort or equitable claims against Schapals or Care Financial under the circumstances of this case based on the fact that she is not listed as the owner or the annuitant and is instead designated as the primary beneficiary on the annuity. Accordingly, Security Benefit has waived this argument. See, e.g., N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); McGowan v. AME Fin. Corp., 2009 U.S. Dist. LEXIS 138263, at *56-57, 2009 WL 10666307, at *18 (N.D. Ga. Dec. 18, 2009) ("Defendants have failed to offer any authority in support of their argument and have failed to adequately develop their argument. Defendants only offer

conclusory statements devoid of explanatory reasoning. Defendants also fail to indicate which state law claims would fail due to lack of a basis for liability. If this court were to fill in the reasoning and the authority on Defendants' behalf, it would not be fair to Plaintiff, who had no real notice of Defendants' argument. Because Defendants' argument is completely undeveloped and lacks supporting authority, it is waived."), report and recommendation adopted, 2010 U.S. Dist. LEXIS 150718, 2010 WL 11507154 (N.D. Ga. Feb. 5, 2010).

With respect to Plaintiffs' negligence claim, Security Benefit does not dispute that the allegations in the complaint are sufficient to state a cause of action for negligence against Schapals under Alabama law. However, Security Benefit argues that Plaintiffs' negligence claim is barred by Plaintiffs' contributory negligence in failing to read the annuity and related documents. (Doc. 17 at 22-23).

Under Alabama law, "[c]ontributory negligence is an affirmative and complete defense to a claim based on negligence." Serio v. Merrell, Inc., 941 So. 2d 960, 964 (Ala. 2006) (quotation omitted). "[T]he Alabama Supreme Court has 'held that the doctrine . . . applies in the context of an insured's failure to read an insurance contract.'" French v. Davenport Agency, Inc., 2021 U.S. Dist. LEXIS 139596, at *6, 2021 WL 3173579, at *3 (M.D. Ala. July 27, 2021) (quoting Crook v. Allstate Indem. Co., 314 So. 3d 1188,

1199 (Ala. 2020)).

"Because contributory negligence is a defense, not an element of the claim, 'the question of contributory negligence is normally one for the jury,' not dispositive motions." King v. Nationwide Agribusiness Ins. Co., 2021 U.S. Dist. LEXIS 87495, at *8, 2021 WL 1841635, at *3 (N.D. Ala. May 7, 2021) (quoting Crook, 314 So. 3d at 1198); see also Gulledge v. Brown & Root, Inc., 598 So. 2d 1325, 1330 (Ala. 1992) (noting that "summary judgment based on the doctrine of contributory negligence is seldom proper").  "In Alabama, courts can summarily dismiss a claim on contributory negligence grounds only if there is 'undisputed evidence' that 'the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred.'" King, 2021 U.S. Dist. LEXIS 87495, at *8, 2021 WL 1841635, at *3 (quoting Crook, 314 So. 3d at 1199); see also Fraiser v. Blackboard Ins. Co., LLC, 2020 U.S. Dist. LEXIS 184028, 2020 WL 5889272, at *4 (S.D. Ala. Oct. 5, 2020) ("[W]here the facts are such that all reasonable persons must reach the same conclusion, contributory negligence may be found as a matter of law.") (quoting Alfa Life Ins. Corp. v. Colza, 159 So. 3d 1240, 1249 (Ala. 2014)).

Security Benefit argues that "[h]ad Plaintiffs read the Annuity or the Statement of Understanding signed by Mr. Outlaw, they would have realized that benefits under the [Lifetime] Rider

would not begin until Mr. Outlaw elected the Income Phase Start Date in writing to Security Benefit." (Doc. 17 at 23). Security Benefit further argues that "[h]ad Plaintiffs read the Annual Statements, they would have realized that the Income Benefit Base was decreasing each year." (Id.). Security Benefit asserts that Plaintiffs' failure to read these documents renders them contributorily negligent and causes their negligence claim to fail as a matter of law. (Id.).

Based on the limited record before the Court and drawing all reasonable inferences from the available record in Plaintiffs' favor, the undersigned cannot conclude that there is no reasonable possibility that Plaintiffs' negligence claims against Schapals would survive a dispositive motion based on contributory negligence in an Alabama state court. First, it appears that a state court's determination of whether Plaintiffs were contributorily negligent as a matter of law would only be made after the development of the type of factual record that does not yet exist in this case. See French, 2021 U.S. Dist. LEXIS 139596, at *7-8, 2021 WL 3173579, at *3 (in resolving a motion to remand based on fraudulent joinder, the court declined to rely on an Alabama appellate case that found contributory negligence based on insureds' failure to read and understand the coverage provided by their auto insurance policy because the Alabama appellate case "concerned a ruling upon motion for summary judgment" and "the

court had before it a factual record from which it could determine whether the plaintiff was on notice that the insurance policy did not provide the type of coverage the plaintiffs alleged they had sought[,]" whereas "at the motion to remand stage, no such record exists"); Jones v. State Farm Fire & Cas. Co., 2016 U.S. Dist. LEXIS 104233, at *10-11 n.4, 2016 WL 4472980, at *4 n.4 (M.D. Ala. Aug. 5, 2016) (where defendants asserted that the plaintiff's negligent procurement claim "was barred by contributory negligence in that she should have questioned or objected to the amount of coverage suggested by" her insurance agent, the court found that the "factual allegations in this case [were] contested by the parties and improper for resolution on a motion for remand, at which stage all evidence and reasonable inferences m[ust] be made in the light most favorable to the plaintiff"), report and recommendation adopted, 2016 U.S. Dist. LEXIS 112056, 2016 WL 4445245 (M.D. Ala. Aug. 23, 2016).

At this early juncture, the Court lacks potentially relevant information which would allow it to properly gauge Defendants' contributory negligence defenses. In other words, the record is devoid of information regarding each Plaintiff's level of literacy, education, and sophistication and involvement with respect to financial matters. As such, the undersigned cannot, at the motion to remand stage, find undisputed evidence that each Plaintiff was competent in intelligence and background to

understand the specialized terms and provisions in the annuity and its various riders and their relationship to one another. The Court also lacks sufficient evidence to substantiate Security Benefit's claim that Mrs. Outlaw should be held responsible for reading and understanding the annuity, the statement of understanding, and the annual statements, since Mr. Outlaw is listed as the owner and annuitant, the statement of understanding was signed by Mr. Outlaw only, and the annual statements were addressed only to Mr. Outlaw. See Whitlock v. Jackson Nat. Life Ins. Co., 32 F. Supp. 2d 1286, 1292 (M.D. Ala. 1998). Thus, Security Benefit has not shown by clear and convincing evidence that there is no reasonable possibility that either Plaintiff can state a claim for negligence against Schapals based on their alleged contributory negligence in failing to read and understand the annuity and related documents.

Security Benefit has also failed to show that there is no reasonable possibility that Plaintiffs can state a claim for breach of fiduciary duty against Schapals. Security Benefit argues that Plaintiffs' breach of fiduciary duty claim against Schapals fails as a matter of law because "[i]t is well-established in Alabama that no fiduciary duty exists as a matter of law between an insurance company's agents and the insured." (Doc. 17 at 27 (citing Maloof v. John Hancock Life Ins. Co., 60 So. 3d 263, 273 (Ala. 2010)). According to Security Benefit:

> Plaintiffs allege that they entered into a fiduciary relationship with Schapals "when Plaintiffs agreed to use Schapals as their financial advisor on the Annuity investment." . . . But as the above case law makes clear, the sale of insurance products does not give rise to a fiduciary relationship, nor have Plaintiffs alleged any additional facts to support the creation of such a relationship.

(Id.).

Plaintiffs counter that Schapals was not acting as an insurance agent, and that it is "uncontested and well-pleaded that Schapals was and continues to act as an independent financial advisor and is the Vice-President of Defendant Care Financial." (Doc. 18 at 6-7 (citing Doc. 1-1 at 10)). Plaintiffs state that "Schapals was listed as the annuitant's financial advisor on the annuity, but he never had an agency relationship with Security Benefit, and is not now an 'insurance' agent or employee of Security Benefit." (Id.).

"It is well settled in Alabama that to state a claim for breach of fiduciary duty, a party must allege: (1) the existence of a fiduciary relationship between the parties; (2) a breach of the fiduciary duty; and (3) damages caused by the breach." Prudential Mut. Fund Servs., LLC v. Meredith, 2021 U.S. Dist. LEXIS 136582, at *12, 2021 WL 3116819, at *4 (S.D. Ala. July 22, 2021); see Regions Bank v. Lowrey, 101 So. 3d 210, 219 (Ala. 2012).

The Alabama Supreme Court has defined a fiduciary or confidential relationship as one in which:

[O]ne person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible.  It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

Univ. Fed. Credit Union v. Grayson, 878 So. 2d 280, 290 (Ala. 2003) (quotations omitted).

In their complaint, Plaintiffs allege that Care Financial "is a Financial and Insurance Advisor Company[,]" and that Schapals "is a Financial Advisor and currently the Vice President of Care Financial[.]" (Doc. 1-1 at 10).  Plaintiffs also allege that they met with Schapals in 2012 to discuss their "retirement objectives and long-term financial goals." (Id. at 10-11).  According to Plaintiffs, they "discussed in confidence their financial situation and provided Schapals with their financial and insurance information, as well as their retirement plan." (Id. at 11).  Plaintiffs allege that Schapals provided them "with financial and retirement options" and "also discussed and encouraged" them to purchase an annuity issued by Security Benefit, "a life insurance company with whom" Schapals and Care Financial "have a financial

relationship and with whom they regularly conduct business." (Id.). Plaintiffs further allege that Schapals "is the Financial Advisor on the Plaintiffs' Total Value Annuity account and is listed as the Financial Professional on each Security Benefit Annual Statement to the present." (Id. at 12).

In count six, Plaintiffs allege that a fiduciary relationship between Plaintiffs and Schapals "began in November 2012 in Jackson, Alabama" when Schapals "met with Plaintiffs and agreed to provide them with financial, insurance, and retirement advice." (Id. at 24). Plaintiffs also allege that "[a]s part of this fiduciary relationship," they provided Schapals and Care Financial "with extensive confidential and personal financial information and retirement objectives based on their family and financial restrictions." (Id.). According to Plaintiffs, Schapals used this "confidential and personal information" to provide "Plaintiffs with financial, insurance and retirement advice which they accepted and respected." (Id.). Plaintiffs also allege that based on Schapals' advice, they agreed to purchase the annuity from Security Benefit, and that Schapals "agreed to serve as the Financial Professional/Advisor for the life of the Annuity." (Id.).

The foregoing allegations make clear that Schapals is not alleged to have been acting merely as an insurance agent or salesman, as Security Benefit suggests. Rather, Plaintiffs have

plausibly alleged that that they had a trusting and confidential relationship with Schapals as their financial advisor which gave rise to fiduciary duties. Notably, the Alabama case primarily relied on by Security Benefit for the proposition that no fiduciary duty exists as a matter of law between an insurance company's agent and the insured was decided on summary judgment based at least partly on an insured's deposition testimony about the specifics of his relationship with the insurance agent and evidence that the insured was a well-educated professional and an experienced investor. See Maloof, 60 So. 3d at 273-74. No such factual record exists in this case, but Security Benefit nevertheless asks this Court to conclude, despite Plaintiffs' plausible allegations to the contrary, that there is simply no possibility that an Alabama court could find sufficient evidence of a fiduciary duty owed to Plaintiffs by Schapals. This the Court cannot do. Accordingly, Security Benefit has not shown by clear and convincing evidence that all of Plaintiffs' claims against Schapals fail on the merits as a matter of law.

Security Benefit makes the additional argument that all of Plaintiffs' claims against Schapals and Care Financial, including their causes of action for negligence and breach of fiduciary duty, are time-barred. (Doc. 1 at 4-12; Doc. 17 at 11-13).

"Under Alabama law, claims for negligence are subject to a two-year statute of limitations." Piazza v. Ebsco Indus., Inc.,

273 F.3d 1341, 1347 (11th Cir. 2001); see Ala. Code § 6-2-38(l). "The statute of limitations begins to run from the time the plaintiff's cause of action accrues, and there is no 'discovery rule' for negligence claims that would toll the running of the statute of limitations from the time the cause of action was 'discovered' by the plaintiff." Singer Asset Fin. Co. v. Connecticut Gen. Life Ins. Co., 975 So. 2d 375, 382 (Ala. Civ. App. 2007). A cause of action for negligence "accrues as soon as the plaintiff is entitled to maintain the action, i.e., at the time of the first legal injury, regardless of whether the full amount of damages is apparent." Griffin v. Phar-Mor, Inc., 790 F. Supp. 1115, 1116 (S.D. Ala. 1992).

Likewise, "Alabama requires actions for a breach of fiduciary duty to be brought within two years." Williams v. Fed. Nat'l Mortg. Ass'n, 2020 U.S. Dist. LEXIS 225620, at *31, 2020 WL 7066318, at *13 (S.D. Ala. Dec. 2, 2020); see Ala. Code § 6-2-38(l). The statute of limitations period on a claim for breach of fiduciary duty runs "from the date of the accrual of a cause of action, not from the date of the occurrence of the act that provides the basis for the cause of action." Sys. Dynamics Int'l, Inc. v. Boykin, 683 So. 2d 419, 421 (Ala. 1996). In general, a cause of action for breach of fiduciary duty accrues when the plaintiff suffers damage from the breach. Id.; Jackson v. Secor

Bank, 646 So. 2d 1377, 1379 (Ala. 1994)).[7]

Plaintiffs argue that "Alabama's two-year statute of limitations for negligence claims and fraud was tolled due to the continuous tortious conduct by Schapals." (Doc. 10 at 15 (citing W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co., 208 F. Supp. 3d 1227, 1232 (N.D. Ala. 2016) ("[W]hen a defendant commits a continuing tort, the statute of limitations is tolled until the defendant ceases the tortious conduct.")). Plaintiffs state that Schapals' "tortious conduct is not characterized in the Complaint as a single act with numerous consequences." (Id.). Rather,

---

[7] Plaintiffs assert:

> Under Alabama law, "'[t]he statute of limitations applicable to a case alleging a breach of fiduciary duty allows two years to file the action,' and 'the statutory period begins to run at the point when the fiduciary relationship between the trustee and the beneficiary is terminated.'" Ladd v. Stockham, 209 So. 3d 457, 463 (Ala. 2016) (citing McCormack v. AmSouth Bank, N.A., 759 So. 2d 538, 541 (Ala. 1999) and Tonsmeire v. AmSouth Bank, 659 So.2d 601, 604 (Ala. 1995)).

(Doc. 10 at 7).

However, in cases (such as this one) "alleging a breach-of-fiduciary-duty claim not involving a trust, [the Alabama Supreme] Court has not considered the date the parties terminated their fiduciary relationship when considering the application of the two-year statute of limitations; rather, it has focused on when the aggrieved party was damaged." Tender Care Veterinary Hosp., Inc. v. First Tuskegee Bank, 168 So. 3d 33, 38 (Ala. 2014) (quoting Sys. Dynamics, 683 So. 2d at 421). Thus, the Court rejects Plaintiffs' contention that the limitations period on their breach of fiduciary duty claim only began to run when their fiduciary relationship with Schapals terminated.

Plaintiffs contend that "as their financial advisor on the Annuity investment, [they] sought Schapals' assistance on numerous occasions over their ten-year relationship and Schapals continued to provide false assurances and/or concealed truths from Plaintiffs." (Id. at 15-16). Security Benefit counters that "the continuous tort doctrine is inapplicable" because "Plaintiffs allege a single act—failing to 'activate' the Income Rider—followed by continuing consequences. (Doc. 17 at 12). Security Benefit asserts that "there are no allegations of wrongdoing on the part of the Resident Defendants after 2013." (Id.).

"A continuous tort refers to 'a defendant's repeated tortious conduct which has repeatedly and continuously injured a plaintiff.'" Haynie v. Howmedica Osteonics Corp., 137 F. Supp. 2d 1292, 1294 (S.D. Ala. 2000) (quoting Moon v. Harco Drugs, Inc., 435 So.2d 218, 220 (Ala. 1983)). "[A]s the definition above makes clear, it takes more than a continuous injury to satisfy the continuous tort theory. The tortious conduct itself must also be repeated." Id. The continuing tort doctrine, when it applies, "operates to toll the running of the limitations period in tort cases until the date that the last injury occurred." AC, Inc. v. Baker, 622 So. 2d 331, 335 (Ala. 1993). "[I]n such cases, only damages which occurred within the period of limitation may be recovered." Santiago v. Lykes Bros. S.S. Co., 986 F.2d 423, 426 (11th Cir. 1993) (quotation omitted); see also Evans v. Walter

Indus., Inc., 579 F. Supp. 2d 1349, 1367 (N.D. Ala. 2008) ("Even where the statutes of limitations are tolled [by a continuous tort], a plaintiff can recover only for injuries sustained during the limitations period."). The Alabama Supreme Court has noted that "[w]here multiple acts are involved, subsequent damages have been recognized as flowing from subsequent acts, and the fact that a limitations period may have expired as to an earlier act does not bar an action for the subsequent injury." Hensley v. Poole, 910 So. 2d 96, 102 (Ala. 2005) (quoting Spain v. Brown & Williamson Tobacco Corp., 872 So. 2d 101, 114 (Ala. 2003)). As relevant here, the continuing tort theory applies to claims for negligence and breach of fiduciary duty.[8] See Madison Cnty. Commc'ns Dist. v. Bellsouth Telecommunications, Inc., 2009 U.S. Dist. LEXIS 132680, at *33, 2009 WL 9087783, at *9 (N.D. Ala. Mar. 31, 2009).

In count two of their complaint, Plaintiffs allege that Schapals "agreed to serve as the Financial Professional during the life of the Annuity." (Doc. 1-1 at 17). Plaintiffs further allege that "[a]s the Financial Professional/Advisor on the Security

---

[8] Although Plaintiffs invoked the continuing tort theory in connection with their causes of action for negligence, negligent misrepresentation, and fraudulent misrepresentation (Doc. 10 at 15), the Court has an obligation to ensure that it has subject matter jurisdiction over this action; therefore, the Court may *sua sponte* address the applicability of the continuing tort theory to Plaintiffs' breach of fiduciary duty claim. See Taylor v. Trevor Eaves Logging, LLC, 2020 U.S. Dist. LEXIS 183085, at *6 n.4, 2020 WL 5880189, at *2 n.4 (N.D. Ala. Oct. 2, 2020) (citing Univ. of S. Ala., 168 F.3d at 410).

Benefit Annuity, Schapals owed Plaintiffs a duty to responsibly manage and oversee Plaintiffs' Annuity performance" and "a duty to responsibly manage and oversee each rider and endorsement to the Annuity, including the performance of the Lifetime Rider." (Id.). Plaintiffs further allege that "[a]s the Annuity Financial Professional/Advisor to the Annuity, Schapals and Care Financial had a duty to oversee the release of the Annuity's accumulation phase, and lock-in the Annuity's Lifetime Income Benefit Base[,]" a duty which "included notifying and alerting Security Benefit if the Lifetime Rider was not properly activated." (Id. at 18).

In count six of the complaint, Plaintiffs allege that Schapals agreed to serve as their "Financial Professional/Advisor for the life of the Annuity" and "owed Plaintiffs a duty to oversee the implementation and operation of the Annuity." (Id. at 24). Plaintiffs further allege that Schapals and Care Financial "breached their fiduciary duty to Plaintiffs by failing to exercise their professional judgment and oversight obligations on which Plaintiffs reasonably relied throughout the life of the Security Benefit Annuity." (Id. at 25).

Plaintiffs also allege in the complaint that despite Schapals being listed by Security Benefit as "their Financial Professional responsible for the Annuity[,]" neither Schapals nor Care Financial "ever activated the Lifetime Rider . . . and [none] of these Defendants informed Plaintiffs that the Lifetime Rider was

33

never activated." (Id. at 14). Plaintiffs allege that the "failure to timely activate the Lifetime Rider . . . resulted in the Annuity losing substantial base value every year since 2013." (Id.). Similarly, Security Benefit notes that "Plaintiffs began making systematic withdrawals from the annuity in 2013, yet Mr. Outlaw never elected an Income Phase Start Date[,]" which steadily reduced the amount of the annuity's Lifetime Income Benefit Base. (Doc. 17 at 2; see Doc. 1-3). And, in an affidavit attached to the motion to remand, Mr. Outlaw avers that "[d]uring the next ten years [following the purchase of the annuity], [he] communicated with Schapals on at least three other occasions for assurances that the Annuity investment would continue to perform as Schapals represented in 2012 and Schapals said yes." (Doc. 10-1 at 3).

Construing the allegations and evidence in the light most favorable to Plaintiffs, the Court cannot agree with Security Benefit's characterization of the complaint as alleging a single act followed by continuing consequences. From the allegations outlined above, Plaintiffs' causes of action for negligence and breach of fiduciary duty are arguably based at least partly on Schapals' alleged ongoing failure to responsibly manage and oversee the performance of the annuity, including by failing to notify Plaintiffs that the Income Phase Start Date under the Lifetime Rider had not been elected and needed to be elected in order to "lock-in" the Income Benefit Base. The complaint

34

indicates that Schapals' alleged ongoing breach of his duty to exercise his oversight obligations with respect to the annuity continued at least until September 2022, and that as a result of Schapals' ongoing breach, Plaintiff's annuity lost "substantial base value every year since 2013." (See Doc. 1-1 at 14).

Even if Plaintiffs' negligence and breach of fiduciary duty claims against Schapals are barred by the statute of limitations to the extent they involve acts or omissions that occurred more than two years prior to the date of the complaint, they are not barred in relation to acts or omissions by Schapals that occurred in the two years prior to the filing of this action. See Hensley, 910 So. 2d at 102; Life Ins. Co. of Ga. v. Smith, 719 So. 2d 797, 802-03 (Ala. 1998). Thus, since Plaintiffs' claims are arguably based, in part, on acts or omissions by Schapals that occurred in the two years preceding this action, the Court finds that Security Benefit has failed to prove by clear and convincing evidence that there is no reasonable possibility that Plaintiffs can state claims for negligence and breach of fiduciary duty against Schapals that are not time-barred.[9]

## IV.  CONCLUSION

For the reasons stated above, the undersigned concludes that

---

[9] In light of this finding, the Court need not address Plaintiffs' arguments that the applicable statutes of limitation were tolled by Schapals' alleged fraudulent concealment of the fact that the Lifetime Rider had not been "activated" as promised.

Security Benefit has failed to establish by clear and convincing evidence that Schapals was fraudulently joined, as necessary to support federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Accordingly, it is recommended that Plaintiffs' motion to remand (Doc. 10) be **GRANTED**, that Defendants' motions to dismiss (Docs. 6, 26) be **DENIED as moot,** and that this action be remanded to the Circuit Court of Clarke County, Alabama, pursuant to 28 U.S.C. § 1447(c).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error

if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **29th** day of **November, 2023.**

                        /s/ SONJA F. BIVINS
                        **UNITED STATES MAGISTRATE JUDGE**